UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) | CHAPTER 13 |
|  | ) |  |
| IN RE: | ) | CASE NO. 07-63208 |
|  | ) |  |
| BRIAN SCOTT BAUGHMAN, SR., and | ) | JUDGE RUSS KENDIG |
| KRISTINE MARIE BAUGHMAN, | ) |  |
|  | ) | **MEMORANDUM OF OPINION** |
| Debtors. | ) |  |

This matter is before the Court on two objections to the confirmation of the Chapter 13 plan of Brian Scott Baughman, Sr. and Kristine Marie Baughman ("Debtors"). The first objection was filed by Chapter 13 Trustee Toby L. Rosen ("Trustee") on December 6, 2007; the second was filed by creditors FIA Card Services, N.A. by eCAST Settlement Corp. as its agent and eCAST Settlement Corp. ("eCAST") on December 11, 2007. Both objections are based entirely or primarily on an ownership deduction Debtors claimed on Form B22C (the "means test") under IRS local standards for ownership expenses on a 1994 Chevy Astro van. Trustee and Creditors allege that the ownership deduction was improperly claimed because Debtors owned the subject vehicle free and clear, and that the plan must therefore not be confirmed. For the reasons set forth below, the Court denies confirmation of the Debtors' plan.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed the instant Chapter 13 case and accompanying proposed Chapter 13 plan on October 22, 2007. Their annualized current monthly income from line 21 of their amended means test, filed December 5, 2007, is $83,148.00, placing them above the median. They have one dependent, a daughter who was age eleven on the petition date. Debtors' Schedule F declares unsecured nonpriority debt of $106,290.00.

Debtors' schedules declare that they own two vehicles: a 2000 Mitsubishi Galant and a 1994 Chevrolet Astro Van. The Galant is subject to a lien in favor of National City Bank and is worth less than the amount of the secured debt. The Astro is unencumbered. On their Form B22C, Debtors claimed ownership expenses under IRS Local Standards for transportation

ownership/lease expenses, which in this locality are $471.00 for a first vehicle and $332.00 for a second for cases filed between October 15, 2007 and December 31, 2007 (inclusive). Their plan provides for monthly payments of $650.00, $160.00 of which are to be applied towards the $8,000.00 secured debt on the Galant (after the excess is crammed down). Debtors' Schedule I shows a net income of $4,702.00; their Schedule J declares average monthly expenses of $4,052.00. Because Debtors' car payments are to be made through the plan, no ownership expenses are scheduled as part of Debtors' Schedule J.

On December 6, 2007, Trustee filed an objection to confirmation of the debtors' chapter 13 plan. On December 11, 2007, eCAST did so as well. The Court held a hearing on the matter on on January 23, 2008. Trustee argued that Debtors should not be permitted to deduct ownership expenses for the second vehicle which they own free and clear, and that the $332.00 deduction for the Astro should therefore be disallowed, and confirmation denied. Trustee did suggest that Debtors could be allowed to claim an additional $200 monthly operating expense deduction instead of the ownership deduction, citing Internal Revenue Manual § 5.8.5.5.2 at para. 3. (Trustee's Br. 2.) eCAST argued that Debtors should not only be precluded from claiming the $332 deduction for a second vehicle owned free and clear, but should also be precluded from claiming the unused portion of the $471 ownership allowance for their first vehicle, which remains secured by a lien but on which the future payments over the next sixty months tally only $113.20 per month.

## LEGAL ANALYSIS

### I. Ownership Expense Deductions for a Vehicle Owned Free and Clear of Liens

In order for a chapter 13 plan to be confirmed over a trustee's objection, a plan must provide that all of the debtor's projected disposable income over the applicable commitment period will be used to satisfy the claims of unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). "Disposable income," in turn, is defined as the debtor's current monthly income less certain allowable deductions, which (with the exception of charitable contributions, not at issue here) are determined by reference to the same standards used to determine if a presumption of abuse would arise under chapter 7, pursuant to 11 U.S.C. §707(b)(2). 11 U.S.C. § 1325(b)(2) and (3). Under § 707(b)(2)(A)(ii)(I):

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

From this springs the primary issue in this case: when the Local Standards allow a

2

deduction for an expense that a debtor is not in fact paying, can a debtor nevertheless claim that deduction on the means test?

This is, to put it mildly, not the first time this issue has been presented to a bankruptcy court. As one jurist recently noted,

> given the number of decisions, articles, and commentaries on the issue, the dispute has matured to the point that there is little, if anything, new that can be said about it. As a result, unless an author wants to rehash something that has already been said innumerable times before, there is little left to do but choose which of the two divergent paths to follow and offer up a brief explanation as to why.

In re Hubbard, 384 B.R. 808, 811 (Bankr. N.D. Ind. 2007). This Court does not believe its task here to be quite so easily discharged; nevertheless, it is true that the initial determination–whether or not the allowance can be claimed–is a binary one. The Hubbard court offers a succinct summation of the competing lines of caselaw:

> This issue has hopelessly divided the nation's bankruptcy courts. In very broad terms, the dispute arises out of differing perceptions concerning the proper role of the IRS standards and the ownership expense components they contain. One group of decisions views it as an automatic allowance, the availability of which is determined simply by the number of vehicles, one or two, a debtor owns. See, e.g., In re Armstrong, 370 B.R. 323 (Bankr. E.D. Wash. 2007); In re Zak, 361 B.R. 481, 488 (Bankr. N.D. Ohio 2007); In re Haley, 354 B.R. 340, 343-44 (Bankr. D.N.H. 2006); In re Fowler, 349 B.R. 414, 420 (Bankr. D. Del. 2006); In re Farrar-Johnson, 353 B.R. 224 (Bankr. N.D. Ill. 2006). The other group of decisions sees the deduction, not as an automatic allowance, but rather as a cap upon what the debtor is permitted to pay. See, e.g., In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Harris, 353 B.R. 304, 309-10 (Bankr. E.D. Okla.2006); In re Lara, 347 B.R. 198, 201 (Bankr. N.D. Tex.2006); In re Oliver, 350 B.R. 294, 301-02 (Bankr. W.D. Tex.2006); In re McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006). Although the dispute roils fiercely at the bankruptcy court level, very few appellate decisions have yet been issued, none of them at a circuit level. The only two district courts to venture into these waters have both concluded that the deduction should be treated as a cap, and not an allowance, and therefore cannot exceed the amount of the payment required. See Fokkena v. Hartwick, 373 B.R. 645 (D. Minn. 2007); In re Ross-Tousey, 368 B.R. 762 (E.D. Wis. 2007).

(Some citations and footnotes altered or omitted.) Debtors cite additional authority in favor of allowing the ownership deduction for vehicles owned free and clear: In re Swan, 368 B.R. 12, 17 (Bankr. N.D. Cal. 2007); In re Lynch, 368 B.R. 487, 491 (Bankr. E.D. Va. 2007); In re

3

Barrett, 371 B.R. 860 (Bankr. S.D. Ill. 2007). See also In re Zaporski, 366 B.R. 758 (Bankr. E.D. Mich. 2007). The march of time has not provided any clarity since the Hubbard decision. Another case Debtors cite in support of their position has actually been reversed since briefs in this case were submitted. In re Wilson, 373 B.R. 638, 644 (Bankr. W.D. Ark. 2007), rev'd, In re Wilson, 383 B.R. 729 (B.A.P. 8th Cir. 2008). Meanwhile, the lower federal courts continue to align themselves with one camp or the other. At least four new bankruptcy court decisions have all ruled in favor of allowing the ownership deduction. In re Weiderhold, 381 B.R. 626, 631 (Bankr. M.D. Pa. 2008); In re Davis, 382 B.R. 764, 768 (Bankr. W.D. Ark. 2008); In re May, 390 B.R. 338 (Bankr. S.D. Ohio 2008); see also In re Phillips, 382 B.R. 153 (Bankr. D. Mass 2008) (debtor was entitled to take full housing deduction under local standards despite having actual rent expense of only $250). The Bankruptcy Appellate Panel in this Circuit has also held that debtors are entitled to the deduction for vehicles owned free and clear of liens, as long as those vehicles are actually used for transportation. In re Kimbro, 389 B.R. 518 (B.A.P. 6th Cir. 2008). Another recent district court decision on the issue, however, has ruled against allowing the deduction. Wieland v. Thomas, 382 B.R. 793, 797-98 (D. Kan. 2008).

The Court is partially, but not entirely, convinced by the arguments in those cases which favor allowing the deduction, both as a matter of statutory interpretation and of policy. The Court agrees with the other courts that have found the distinction between "applicable" expenses, allowed with respect to the National and Local Standards, and "actual" expenses, allowed with respect to Other Necessary Expenses, significant. Indeed, there would seem to be little point in allowing an ownership deduction at all if it were meant to apply only to vehicles serving as collateral for secured loans, whether or not the deduction were further limited to only the extent of the secured payment obligation. As the court noted in In re Moorman, 376 B.R. 694 (Bankr. C.D. Ill. 2007):

> If Congress had wanted to limit vehicle ownership deductions to the amount actually expended for secured debt payment as the IRS does, albeit with a cap, it could have done so by allowing the secured debt payment in full and eliminating the ownership deduction altogether. But, Congress did not do that.

Id. at 699.

Furthermore, if the deduction were allowed in full for a vehicle serving as collateral for a secured loan of any size, but disallowed for a vehicle owned free and clear, the result is arbitrary to the point of nonsensicality. "[I]t seems patently unfair that a debtor who has only one payment remaining on a vehicle or who obtains a small loan collateralized by a vehicle just prior to filing, should be able to take the deduction over another debtor who owns the vehicle outright." Davis, 382 B.R. at 769. The Court notes that this is implicitly the position of the Trustee in this case, since Trustee objected to the allowance of the deduction for the Astro (owned free and clear), but not to the allowance of the surplusage between the actual ownership payment on Debtors' first vehicle (which, pursuant to the proposed plan, is to be $160.00 per month after cramdown) and the $471.00 IRS ownership expense allowance for a first vehicle.

4

Were the Court to adopt this reading of the law, a nearly worthless car secured by a lien demanding payments of $1.00 per month would be substantially more valuable to a debtor than a perfectly serviceable vehicle that the debtor had completely paid off. BAPCPA may at times be a riddle wrapped in a mystery inside an enigma, but the Court is confident that this result is not what Congress had in mind.

However, Trustee is absolutely correct in noting that if the applicable expenses need not be actual expenses, a debtor with above-median income can buy a "lawn ornament" (Trustee's Br. 5) for a pittance in cash on the eve of bankruptcy and claim the ownership expense deduction on the means test while sheltering sixty times the monthly allowance under the IRS Local Standards in cash over the course of a sixty-month plan. In this case (a second vehicle in a case filed October 22, 2007), that amounts to $19,920.00, a not-inconsiderable sum.

Conversely, if the applicable expenses must be actual expenses, a debtor would face the perverse incentive to splurge on a vehicle that would consume as much of the ownership allowance as possible; such a debtor will not pocket this value in cash, but instead in value in a new vehicle. The first rule benefits the debtor alone at the expense of unsecured creditors. The second benefits the debtor less (given that the vehicle will depreciate in value, presumably more than will the value of the dollar over the same length of time), but benefits a new, previously nonexistent secured creditor more–and all at the expense of unsecured creditors. Therefore, while maximizing the dividend to unsecured creditors is a primary policy aim of the Code, that interest does not weigh in favor of either allowing or disallowing the ownership deduction; the unsecured creditors cannot win absent beneficence or ignorance on the part of the debtor and his counsel, neither of which should be assumed. Given the choice merely between Scylla and Charybdis, the Court finds that the balance of legal authority and the policy imperatives of the statutory scheme favor the rule that rewards the strategic economizer rather than the strategic spendthrift, and therefore finds that the law permits the allowance.

## II. Ownership Expense Deductions Above Actual Payments on Encumbered Vehicles

eCAST advances two additional arguments against confirmation, the first of which the Court discusses now and the second of which it reserves for Part IV, infra. eCAST first argues that Debtors should also not be permitted to deduct the unused portion of the allowance for the ownership deduction on their first vehicle, the 2000 Mitusubishi Galant, which remains encumbered by a lien and on which Debtors are making loan payments. The IRS ownership expense allowance for a first vehicle for cases filed in this jurisdiction on the date this case was filed is $471.00. Debtors' future payments on this secured claim, as reflected in line 47b of their amended means test, is $113.20 per month. Debtors then claimed the balance, $357.80 per month, as a deduction on line 28 of their amended means test. Combined, this means that Debtors are claiming the entire amount of the local standard as a deduction on their amended means test, despite spending only $113.20 monthly on the claim secured by the Galant over the life of the plan.

5

Analogous reasoning to that which compels the conclusion that Debtors can claim the full deduction even when their payment is zero compels the conclusion that they may take the remainder of the deduction when their payment is greater than zero but less than the amount of the allowance. It is true, as eCAST rightfully contends, that the means test form is not itself the law. See, e.g., In re Arnold, 376 B.R. 652 (Bankr. M.D. Tenn. 2007). However, there is no basis to find, as eCAST essentially urges, that the form itself is categorically inconsistent with the law, systematically directing debtors to make legal errors. (eCAST concedes that Debtors did in fact properly follow the directions in filling out the form.) The "amounts specified" under the relevant Local Standards are fixed amounts; they do not change based on the amount that the debtor is paying. In a widely cited article discussing the means test, Judge Wedoff of the Bankruptcy Court for the Northern District of Illinois succinctly summarizes the issue:

> because § 707(b)(2)(A)(ii)(I) provides that the debtor's allowed expense deductions "shall be" the "amounts specified" under the Local Standards-and because the statute makes no provision for reducing the specified amounts to the debtor's actual expenses-a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less.

Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 256 (2005). The Moorman court put it somewhat more bluntly:

> A debtor can deduct a minimal secured debt payment-presumably as little as $1.00-from the Standard vehicle ownership deduction, and then still receive the balance of the Standard as a deduction. Thus, with even the smallest of secured debt payments, the Standard deduction is still "applicable" regardless of a debtor's actual ownership expenses.

Moorman at 699. Accord Davis, 382 B.R. at 769. On this issue, therefore, eCAST's objection must be overruled.

### III. Good Faith Requirements When Claiming More Than Actual Expenses in Deductions

Debtors would urge the Court to stop here. The Court cannot do that, because it sees the choice between Scylla and Charybdis here as a false dilemma in this situation. While the Court is convinced that both the statutory text and the public interest in avoiding arbitrary results argue in favor of permitting the allowance, it does not follow from this that the debtors should therefore be able to apply the $332 per month (or $132, $689.80, or $803) to whatever they please. Trustee is correct about the results of adopting Debtors' proposed rule. Debtors could spend half of that money on beer and cigarettes and waste the rest. Calling this deduction one for "transportation lease/ownership" at this point would be a farce. Judge Wedoff notes that practical concerns support allowing the deduction for vehicles owned free and clear–namely, that these vehicles almost by definition are aging and may well not have five years of life left in them:

6

> However, since the means test treats the Local Standards not as caps but as fixed allowances, it is ... reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments. This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

Wedoff, 79 Am. Bankr. L.J at 257-58 (2005). The Court has already found Judge Wedoff's argument for treating the Local Standards as fixed allowances instead of caps persuasive, and that this approach avoids arbitrary distinctions between debtors who finish paying off a vehicle one month before filing and those who have one payment remaining. However, more than merely permitting the deduction is necessary for this approach to reflect the reality that a car without payments is likely to be an aging vehicle that will need replacement within five years. Or, more accurately, the law must do more than merely permit the deduction if the underlying suggestion of Judge Wedoff's observation is to be realized: that the money effectively removed from the pool available to unsecured creditors by allowing the ownership deduction should actually be available to replace the aging vehicle when necessary, or put to some other use comporting with good faith.

The majority rule, which is also Debtors' proposed rule, actually mandates nothing of the sort; it would simply shelter $19,920.00 over five years from Debtors' unsecured creditors that could be spent at Debtors' discretion, on expenses bearing no relation whatsoever to the purpose for which the IRS created the deduction in the first place, which is the expenses of maintaining ownership (or a lease) of a vehicle. This is not a minor quibble. Congress incorporated the Local Standards into the Chapter 7 means test, and thence into the Chapter 13 disposable income calculation, not because it felt that debtors deserve an additional $471.00 or $332.00 per month to do with as they please; if the use of that money were indeed so unrestricted, it would be disposable income in every sense of the word, and subject to the requirement of 11 U.S.C. § 1325(b)(1)(B) (all of a debtor's disposable income over the applicable commitment period is to be applied to payments to unsecured creditors under the plan). Congress incorporated the standards because those standards establish stable, fixed, nondiscretionary measurements of "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor" under 11 U.S.C. § 1325(b)(2)(A)(i). The purpose, not just the dollar value, is part of the statutory prescription. The fact that Congress tied the language to standards with specifically identified purposes reinforces this point. There is a qualitative difference between letting debtors apply $803.00 ($471.00 + $332.00) per month towards the ownership or lease of motor vehicles and letting debtors, without restriction, shelter $803.00 per month from creditors. The deduction was allowed for a specific purpose. The two are not severable absent a showing of good faith.

7

The Court finds that this problem falls under the rubric of good faith. A bankruptcy court is not to confirm a plan unless it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). No one factor is dispositive in any analysis of good faith; under the law of the Sixth Circuit, good faith in the filing of a Chapter 13 plan is to be established by the totality of the circumstances. Alt v. United States (In re Alt), 305 F.3d 413, 419 (6th Cir. 2002); Society Natl. Bank v. Barrett (In re Barrett), 964 F.2d 588, 591 (6th Cir. 1992); Metro Employees Credit Union v. Okoree-Baah (In re Okoree-Baah), 836 F.2d 1030, 1031 (6th Cir. 1988). The non-exhaustive list of circumstances a bankruptcy court is to consider in making this determination include the following:

(1) the debtor's income;
(2) the debtor's living expenses;
(3) the debtor's attorney's fees;
(4) the expected duration of the Chapter 13 plan;
(5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
(6) the debtor's potential for future earning;
(7) any special circumstances, such as unusually high medical expenses;
(8) the frequency with which the debtor has sought relief before in bankruptcy;
(9) the circumstances under which the debt was incurred;
(10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;
(11) the burden which administration would place on the trustee;
(12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

Alt at 419. Another factor the Sixth Circuit considers relevant is "whether the debtor is attempting to abuse the spirit of the Bankruptcy Code." Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1127 (6th Cir. 1990). Courts in other circuits also found the test for good faith to be one of the totality of the circumstances, and the nonexhaustive lists of relevant factors those courts have elucidated generally accord with the Sixth Circuit's. See, e.g., Deans v. O'Donnell (In re Deans), 692 F.2d 968, 972 (4th Cir. 1982); In re Love, 957 F.2d 1350 (7th Cir. 1992) (regarding the good faith test for whether the petition was filed in good faith rather than whether the plan was proposed in good faith, but also holding that "there will often be substantial overlap between these two inquiries"); In re Maronde, 332 B.R. 593, 601-02 (Bankr. D. Minn. 2005); In re Charles, 334 B.R. 207, 217-218 (Bankr. S.D. Tex. 2005).

Of particular interest here are Debtors' living expenses and whether Debtor is attempting to abuse the spirit of the Bankruptcy Code. Debtors are claiming the legal right to keep $19,920.00 over five years for living expenses that bear no relation to the purpose for which Congress, through the IRS Local Standards, permitted debtors to carve out some of their income from the disposable income available to creditors. Debtors have redistributed this money inchoately into other living expenses, as evidenced by their Schedule J. The Court therefore holds that Debtors' plan is not proposed in good faith; when Congress allowed debtors to shelter

8

money from creditors for the costs of owning a motor vehicle, they meant that money to be used for the costs of owning a motor vehicle, or for debtors to specifically justify the good faith of their actions.

Debtors may propose a plan that provides for saving the money above their actual currently monthly ownership expense but below the level of the allowable deduction, earmarked for the future payment of vehicle ownership expenses if, as is likely, their vehicle does not survive the duration of the plan. There are other uses, such as specific unique problems, not accounted for in rigid tests, that could also qualify. The use of these unappropriated funds must meet a searching and particularized good faith examination. A *sub rosa* reallocation throughout the budget is not sufficient. These funds cannot be dispersed as if through capillary action without a particularized examination. This demonstrates the genius of concepts such as good faith. The concept of saving is not inherently incompatible with bankruptcy. In fact, a culture of saving is well worth cultivating where consistent with the Code. This plan does not spend for the allowed purpose, nor does it save, nor does it explain where the difference will go, however, and it therefore cannot be confirmed.

The problem in the current case may be wholly or partially resolved by corrections to the calculations on Debtors' B22C, which appear to be problematic in this case. Nevertheless, Debtors, creditors, and Trustee need this decision in order to make further calculations or arguments.

Trustee's objection to confirmation will be sustained, and eCAST's objection sustained in part and overruled in part, by a separate order to be entered concurrently with this opinion.

/s/ Russ Kendig
_____
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

9

**Service List:**

Brian Scott Baughman, Sr.
Kristine Marie Baughman
225 Westland Ave Sw
Massillon, OH 44646

John H Hornbrook
1400 N Market Ave
Canton, OH 44714-2608

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

Amy M. Blythe
Carlisle, McNellie, Rini, Kramer & Ulrich Co., LPA
24755 Chagrin Professional Blvd., Suite 200
Cleveland, OH 44122